Case number 14-2630 Harry L. Hollingsworth v. Ford Motor Co and UAW Local 600. Argument not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by the defendants. Mr. Wolin, you may proceed for the appellant. Thank you. Good morning, your honors. Good morning. I would request to reserve five minutes for rebuttal. All right. Thank you. You know, just to get one thing out of the way here, on the issue of statute of limitations, that wasn't well briefed. It was hardly briefed at all. And I'm just wondering if you think we might consider that issue either waived or forfeited because there was no developed argumentation about that in the briefs. What do you have to say about that? Your honor, the timeliness of the incident was brought before the district court previously during Ford Motor Company's initial motion for judgment on the pleadings, which was then converted to a motion for summary judgment. And the district court did find that there was a genuine issue of material fact regarding when our client, Mr. Hollingsworth, would have or did reasonably become aware that UAW Local 600 was not going to commit any further investigations or file a grievance on his behalf regarding the sums at issue. And that was put in the district court's December 30th opinion. So I do believe that matter has been addressed and resolved. The incident matter was filed very quickly after UAW finally gave written notice to Mr. Hollingsworth through his counsel. Can I ask you a question about, so there was, you're saying that there is a material issue of fact as to whether he knew or should have known that he should have filed his claim sooner, correct? Let us simplify it. And does that come down under the collective bargaining agreement to whether he asked for a grievance to be filed on his behalf? And if so, does that also go to the duty of representation? They are related issues, your honor. What it does come down to is, as far as the statute of limitations goes, not just his request that UAW Local 600 file a grievance, but then also his continuing follow-up with UAW Local 600 over the course of a year and a half, during which Anthony Richard, the representative for UAW Local 600, which Mr. Hollingsworth was working with, repeatedly represented to Mr. Hollingsworth that he was looking into the matter and trying to find a solution as to why Ford made the deductions that it did. And during this time, Mr. Hollingsworth had requested that a grievance be filed. So when did he request that a grievance be filed? This, your honor, would have been in April of 2011 when he first spoke with UAW Local 600 and after Mr. Hollingsworth had received the third check. The third and final check was not received until April 6th of 2011. So right after he received it, he asked that a grievance be filed on his behalf? Yes. Because I looked at that deposition testimony and it was a little unclear. But if that's the case and he asked that a grievance be filed, then why wouldn't he be on notice under the collective bargaining agreement in this court's precedent in Robinson that he should have filed a lawsuit within six months of that? And if the flip side is true and he didn't ask that a grievance be filed, then how could UAW violate their duty of fair representation? In other words, if it goes back, doesn't he lose one way or the other? Does that question make sense? I do believe it does, your honor, and I'll try to answer that to the best I can. The issue with the statute of limitations isn't just when did Mr. Hollingsworth request that a grievance be filed. It also goes to when would he have been on notice that one was not going to be filed. And during this one-and-a-half-year period, in between his first request and when the lawsuit was actually filed, Mr. Hollingsworth was continuously in contact with Anthony Richard, who repeatedly advised him. He was still investigating. He was still trying to follow up with Ford on why the deductions were made. And at no point did Anthony Richard advise Mr. Hollingsworth that a grievance would not be filed. Wasn't there a time limit for when it had to be filed, though, under the bargaining agreement? There is a time limit as to when the grievance needs to be filed, and that then— So if that's the case, and if it had to be filed by a certain date under the—or by a certain time under the CBA, then why wouldn't the failure to file it by that time trigger the statute of limitations? Well, and that is wherein we find the breach by UAW Local 600 of that duty of fair representation, their failure to file that grievance, their failure to advise Mr. Hollingsworth of this deadline and their continued representation that they're going to look into this, they're going to do something about this. Would he be on notice of what the deadlines are in the continuing bargain in the CBA? Your Honor, I'm not aware that Mr. Hollingsworth directly knew when those deadlines— That was my question. Shouldn't he be aware? I mean, shouldn't he be attributed to know what's in the CBA? I believe Mr. Hollingsworth can also—he can reasonably rely upon the representations by UAW Local 600. As to what the deadlines are? Well, and that is the thing, Your Honor. UAW Local 600 did not advise Mr. Hollingsworth as to any deadlines. But under the precedent of this Court, and maybe every circuit in the country, and the Robinson cases in particular, isn't he tasked with knowing—in other words, to Judge Rogers' question, don't we presume he knows legally under this Court's precedent so that he's bound by that? Does that question make sense? It does, Your Honor, and I believe the ultimate question, though, isn't— as far as the statute of limitations for this claim at issue goes, it's not just when should the grievance have been filed. It's when did Mr. Hollingsworth reasonably become aware that UAW would not pursue anything? And regardless of the specific language in the CBA, Anthony Richard is repeatedly advising Mr. Hollingsworth that he is continuing his investigation and looking into why these deductions were made over this one-and-a-half-year period. What is—is there a time limit in the CBA as to when you can file? In other words, to Judge Rogers' question, is there—you get six months from the incident, or can you file it forever? In other words, he's saying he's looking into it. Is there some time limit that the—let's assume they were representing him. How soon after the grievance do they have to file—after the incident do they have to file? Your Honor, I'm not specifically aware of what the deadline is in the CBA for that. Okay. Well, we've got the situation where you say that the district court in the record below has said that there are factual issues as to the statute of limitation, and that's where it was left at the district court. And then on appeal here, the parties—and, of course, we're not bound by that. We could proceed to rule on the statute of limitations issue. But then the parties here haven't taken it upon themselves to adequately raise or brief the issue on appeal. So does that mean we should nevertheless address the issue or not address the issue? Where do you come out on that? Well, Your Honor, this is an argument which is—it's not been raised by either defendant in the past. It has not been raised at the district court level. And so I'm— Right. It was raised at the district court. We just went over that. But it wasn't briefed here other than UAW, I think, on page 29 of their brief, saying statute of limitations. And so Judge Clay's question is, should we address it when the parties haven't even spent the time to brief it for us? In other words, I threw the Robinson case at you, but you had no notice from the other side. That is correct, Your Honor, and I do believe it is the appellee's burden to carry their case here and to provide their own arguments. So, in other words, you don't have an incentive to make that into an issue on appeal, and the other side didn't really address it within a developed argumentation in their brief on appeal? That is correct, Your Honor. Had it been presented in their briefs on appeal, I would have been happy to address it, and I would have had the opportunity to then address it in our reply brief. Should we be concerned that, and I don't know what the law is in this, I don't know if you do, that no matter what, there is a scenario under which no matter what you lose, in other words, there's a material issue of fact as to statute of limitations, and there's a material issue of fact as to the duty of fair representation. And if you ask them to file a grievance, then you lose under the statute of limitations, and if you didn't, then you lose under the duty of fair representation. Does that question make sense? It does make sense, Your Honor, and I think the best way I can address that now without having had opportunity to brief the issue is that what needs to be looked to is not only when Mr. Hollingsworth first requested that a grievance be filed, but we also need to look to the representations made by UAW Local 600, and I believe there can be some argument there that their continued representation would at the very least toll the statute of limitations until it becomes clear that he's made aware that a grievance is not being filed the period. That's right. If you accept the Robinson case, the published precedent of this court, then it's not relevant whether they made him aware, right, just except for the sake of argument because I know you haven't had a fair chance to look at it. But except for the sake of the argument that he is vested with knowing the contents of the collective bargaining agreement, then it's irrespective of what they told him if he asked a grievance be filed, correct? Does that make sense? It does make sense, and if that is the case, Your Honor. I know it's an unfair position to put you in. Could I ask a question maybe that's related to that? I don't know. You raised some substantial arguments as to why the district court may have been wrong for the reasons it gave, right? Oftentimes when there's an alternative way to appeal, to affirm, we have it within our jurisdiction to affirm on alternative grounds  sometimes maybe if they haven't, but here it was presented below. If we were inclined to consider doing that, am I correct that you would prefer to have the chance to brief that issue before we did so? That is correct, Your Honor. Thank you. Well, you're out of time unless you want to take some of your rebuttal time at this point to address some of the other issues. I appreciate the offer, Your Honor, but I will go ahead and reserve the five minutes for rebuttal. All right. Thank you. Good morning, Your Honors. My name is James Arandieri, and I represent UAW Local 600. The circumstances that bring this case before you today, and I think you've highlighted a significant issue that although recognized in the district court's opinion as one of the bases that we sought a motion for summary disposition was never discussed. In your briefs? In our briefs that came before. So why didn't you waive it? We were dealing with requesting that this court affirm the decision without the necessity of even getting to the time-barred issues that we raised. Okay, so let's say we don't get to it. If we don't feel like we can affirm, absent the statute of limitations, should we do so on that ground where you haven't even briefed it, given the other side notice, cited any cases, developed the argument, or done anything? I think they're well aware of it. They're well aware of the time-barred issue. I think you posed the best question that could be posed, and Judge Rogers did. You can affirm an alternate basis in taking notice of the fact. Would we prefer to have briefed it? Yes. Were we seeking a strategic position to say it didn't need to be briefed at that position? Yes. Was it a choice that we would have probably wanted to brief, that we had hoped that maybe the district court would have at least had some discussion? Yes. Wait, but the district court had discussion. As your opponent pointed out, the district court denied it and said there was a material issue of fact. No, it didn't. That was right after the case had been filed, before any type of discovery had taken place. The representation made by opposing counsel is not accurate. Wait, explain that to me. So was it briefed in the district court? Statute of limitations question. It was briefed in the district court at the time we filed our motion for summary disposition. And did the district court deny summary judgment and say there was a material issue of fact? Not when we filed our brief and motion for summary disposition. That was Ford Motor Company's motion on the pleadings alone, that it was time-barred. We then entered into discovery, and after considerable discovery, including extensive depositions and interrogatories, we then filed our motion for summary disposition, and the court did not rule on that time-barred issue. It has never ruled as it relates to our position. And is there a time- I'm sorry, Judge Clay. No, I didn't mean to. It sounds as though the judge initially ruled upon the issue, and then Ford filed a motion addressing the issue, and that motion then was not ruled upon by the district court. Is that the scenario? Yes, Your Honor. So actually the court did address the issue, he just didn't rule on Ford's subsequent motion. Would that be a fair statement? My recollection is that the motion was strictly on the issue of the pleadings. The pleadings standing alone would have been time-barred. And at that point the judge basically did not rule on the issue and allowed the matter to continue through. The rather large determination was whether it was a hybrid case or whether it preempted state issues. That was pretty much what the judge was dealing with at that first motion on the pleadings. What is the time limit under which the plaintiff would have had to file a grievance? Is there a time limit? Let's say this first. There is no provision in the collective bargaining agreement that allows for a retiree to file a grievance. As far as a time limit for an action that would violate the collective bargaining agreement, there's a 15-day limitation on acts of bidding that a person, and there's a 30-day policy grievance time limit that has to be filed. All of which, in this particular case, was never filed. One thing I want to make clear, Tony Richards said clearly in his testimony, and we cited in our brief, he was never asked to file a grievance. Remember, the gentleman that Mr. Hollingsworth would see and come to the local regularly for retiree meetings. Right, but that's an issue of fact, right? Because Hollingsworth says he did in his deposition clearly. And I know you cite some testimony where he's equivocal, but at one point he says he did. I agree. But I don't think it's a question of fact. He's charged with the responsibility, as you say to Robinson, to know what the time limits are. He did nothing in writing, we know that. And I asked him those questions on several occasions. He did nothing in writing, and he's charged with that responsibility. And I don't think there's a circuit in the country that doesn't adhere to that rule, Your Honor. What about the issue of whether the severance pay concerns, about which the grievance would apply to all employees, both retired and not retired, so as to, at least under the factual circumstances here, make them all subject to the grievance process? There are cases that allow for, where you see the union has filed a lawsuit involving retiree benefits, or in the case of annuities that were supposed to be supplied by a company in lieu of retirement benefits. That's where litigation took place, not a grievance procedure. Litigation where the union filed a lawsuit based upon a breach of contract under the collective bargaining agreement. Go ahead, sir. Well, I mean, and I'm unaware of any case that cites a retiree having the ability, at least in the UAW contracts, and I've represented UAW local 600. Wait, he has two statuses here. As to the final check, I think the final check was the grievance check, he is a discharged employee. As to the other two checks, he's a retiree. So when he's a discharged employee, in other words, he negotiated through the union a discharge, correct? A grievance. And he got the $20,000 for it, the one payment of $20,000. The grievance was filed requesting, among other things, reinstatement, which did not occur. And I think I should be able to give you the setting of that. Well, they reinstated him, I thought, for the limited basis of letting him retire. No, to qualify for the SRI, Special Retirement Incentive Program that was initiated the previous spring. Not to retire, he had the opportunity. But under Republic Steel, doesn't the union have an obligation to represent a discharged employee that negotiates a settlement? This case is exactly what they did. I'm curious to know your yes or no answer to that. On Republic Steel? I think what we did in this particular case was consistent with that. What's the answer then, yes or no? I don't think I have a yes or no for that. Maybe I misunderstood the question. Maybe you could state it again so we could get a yes or no answer to it. Under Republic Steel, does the union have an obligation to represent a discharged employee versus a retiree in the negotiation of the discharge? And then, if there's a breach of that, in the negotiation of the breach, a resolution of it. You're asking me if the proposition as it relates to this particular case or whether Republic stands for that proposition. I agree that Republic stands for that proposition. You do? Yes. And so when he negotiated the $20,000 grievance, that had nothing to do with his status as a retiree, and if they breached that, why doesn't the union have a duty to represent him on that? They didn't breach it. That's the issue. No, no, they didn't breach it. Well, they took his credit card payments out of it. They took the fact, and I think we have to take note of the fact that when he came to that point in time in August, when this resolution, there was overwhelming facts that justified termination, that he would not get his job back because of the theft that was involved. Okay, and so there was a settlement of that theft, right? The singular grievance issue was settled in the exhibit that was posed or the document that reflects that, and it says this settles all issues. Isn't this a dispute that you're describing over the scope of the settlement? You say the settlement said one thing, and they say the settlement said something else. Well, the settlement said $20,000, and he got $20,000. But they took the ____. I disagree with that. If I have a dispute with you over $8,000 and we settle it. I know I'm running over my time, but I have to make this point, and it deals directly with the situation you're talking about. At the time that this resolution occurred, we were completely unaware that there was any checkoffs that he was paying back forward for money he owed them previously, completely unaware. He didn't know it either until they started taking money because the settlement agreement didn't make clear that those deductions would be made. No, it does. In full and complete settlement of this grievance, that's all it talks about is this grievance. But if there were deductions going to be made from the gross amounts pursuant to the settlement agreement, those were not delineated in the settlement agreement papers. Because they weren't a matter of issue. No more could we determine, and you found other documents. I presume that Ford and even the UAW had sufficient resources from an accounting standpoint to determine if there are going to be deductions from the settlement amounts and could have so stated in the settlement agreement. Not when we're deciding on whether or not this member was going to get his job back versus negotiating a deal that put $60,000 in his pocket that allowed him to be reinstated for the singular purpose of qualifying for the special retirement incentives that occurred during the spring. And the deductions are recited in the actual agreement. I agree with Judge Clay. Hold on. You're saying he was fired. Let's just use the word fired. Fired for theft, right? And part of the theft was the credit card, correct? Part of it. Yeah. And so he says, I'll negotiate a full and complete settlement. You let me go. Reinstate me, obviously, for retirement. Let me go, and you pay me $20,000, right? If they were going to take, if they were accounting for the theft, why not deduct that from the $20,000? Why give him the $20,000 and then take it back? I'm going to let Ford discuss that part of it, but I do want to answer this in this context. That the issue as it relates to the settlement and the settlement amount was negotiated in his best interest in terms of the duties and the responsibilities we had to him. And the fact of the matter is that he had received, there were technical issues that occurred in accounting. He had received payments when he shouldn't have received payments. He was placed in an active status when he was already termed. That's different than the credit card debt, right? I understand what you're talking about with regards to his children and things like that. But with regards to the credit card debt, that is the exact thing that was at issue when he was let go. And they negotiated a full and complete settlement of that. If we can't figure it out because it could go either way, isn't that a question for the jury? We don't need to figure out the answer. We just need to, if we can't figure it out, isn't it a jury question? I think it's an issue between Mr. Hollingsworth and Ford Motor Company in terms of money that he took that they wanted to get reimbursement for. I think that's his cause of action. If there is a cause of action, it's between him and Ford Motor Company. And if we find you had a duty to represent him on that and didn't, then he's got you in the crosshairs too, right? He's had us in the crosshairs. But there's no basis for it. No, I said if we find you have a duty of representation and there's a material issue of fact, then you're in as well. That's true. Okay. Thank you. Thank you. May it please the Court. Julia Turner Baumhardt on behalf of Defendant Ford Motor Company. I'm going to move right into addressing the issue that was just being discussed with Mr. Anderi. The credit card debt was not the reason for his termination. The reason for his termination was that an audit found that in the last two years that he was at the St. Thomas plant assigned as a quality rep, he submitted over $10,000 in fraudulent duplicate cash receipts. That's entirely separate from the credit card debt. The credit card debt, an employee with a credit card, which he denied he had, although he did submit some visa receipts. But the credit card debt, when an employee has a forward credit card, they have an agreement with the credit card company, and that agreement says that they're responsible for any personal charges, that they are obligated to pay any personal charges. They have an agreement with the credit card company? They signed an agreement. It's with the credit card company. Is it a Ford credit card company or someone else? It's Citibank. Okay. Then why are you taking money for Citibank? Why isn't Citibank going after it? Because Citibank goes after Ford when the employee doesn't pay. But it's not a discharge. Because you co-sign on the card. How does Ford have a responsibility? You co-sign on the card? It's a Ford corporate account. Okay. What happens is that employees who make personal charges on their Ford credit card are not discharged for that. They're given the opportunity to repay it. They're expected to repay it, and under the agreement, they're required to repay it. So he wasn't discharged because he made personal charges on the credit card. He was discharged for the fraudulent duplicate cash receipts. And he talked about the cash receipts in the grievance. That's what the grievance said. I didn't misuse company funds because I submitted all my travel expense reports, my TERS, and I submitted all my cash receipts, and my supervisor approved them. His supervisor was also discharged. So it's incorrect to say that that's what the grievance was about. The grievance determination was based on his fraudulent submission of duplicate cash receipts. But he challenged whether there was such a fraudulent submission of duplicate cash receipts. Is that right? He did. And if he was right, he probably, which you would say he wasn't right, but if he was right, they wouldn't have been able to take that money back from him, right? They didn't take the money back for the duplicate cash receipts. Oh, the money was only for the credit card? It was only the credit card that was deducted. Well, there were three checks. There was a check that had deductions for health benefit overpayment, and then a second check for deductions for taxes, and then the third check for $13,000 in deductions for accidental overpayment of benefits. So, I mean, the facts kind of get a little muddled. I guess the grievance pertained to check three. Is that right? The grievance settlement check was the third check he received. The grievance settlement did a couple of things. Yes, it resolved the discharge grievance, and as a result of it, it not only said he would receive $20,000, but that he would take a severance package. So the contention here is that Ford breached the settlement agreement by charging the plaintiff with back payments for things that should have been settled, or at least that's what he would claim, because you had a full and complete settlement pertaining to the fraudulent payments. And then I guess his argument would be it was wrong for you to deduct these benefits and other things from the agreement because the agreement did not say that you could do that. How do you respond to that? Well, part of the agreement, in addition to negotiating the fact that he would ultimately receive $60,000, also negotiated a new status for him, and that is the status. Also negotiated what? A new status for him, and that was the status of retiree. So our position. What do you mean? He was already retired, and he was reinstated for purposes of working out this dispute of being paid his settlement amount, wasn't he? Wasn't he already retired? No, he was not retired at that point. When did he retire? He retired September 1, 2010, after he signed the grievance settlement. He was not retired prior to that date. I thought he retired in the settlement. Okay, I see. The settlement was in August, and he retired in September of 2010. That's correct. He backdated the releases that entitled him to the other $40,000 because that was the period of time. That settlement package was offered back in the spring of 2010. So he had to backdate the releases to, I think, sometime in May of 2010 because that's when the package had been made available. It was no longer available at the time he actually signed the documents. Okay. Okay, so Ford's position is that the settlement, the grievance settlement incorporates the other documents it references, which certainly entitle Ford to repayment of debts that is owed. Could I ask a question that I think maybe goes to some of the you're saying that the reason for part of the deduction in the third check was not supported in the grievance, right? It related to credit card debt and the grievance related to whether he had done something else that was financially incorrect. Am I right? You are right that the grievance settlement itself, without incorporating in the other documents that he signed in order to receive $40,000 additional dollars. I guess what I want to ask is, let's say you enter into an agreement that says, I'll get $20,000 and I'll go away. And for some reason that doesn't relate to the grievance, that doesn't relate to retirement benefits, that's just out of the blue wrong, they don't include $5,000 in the check. It's not wrong because of something in the grievance. It's just wrong. It's Alice in Wonderland, wrong. Why is a grievance with respect to that failure to pay the amount that you settled for not part of the settlement aspect and not related and instead not related to retirement benefits? It doesn't have anything to do with retirement benefits, right? It just has to do with whether he's getting his settlement. Why does it matter what reason they claimed he's not getting his settlement money? He says, you didn't give me my settlement money. That's settlement money. I want my settlement money under these cases. I don't see why that's something the union shouldn't represent him on. The union negotiated this settlement. He claims he's not getting it for whatever reason. That relates to whether he's getting his settlement money or not. Mr. Hollingsworth did not hesitate to call Ford Motor Company more than a year after he received the last of his checks and say to them, I lost my third check. Would you reissue it? That's what Ford would have expected him to do. They would have expected him to call them. He's a retiree now. They've got departments dedicated to dealing with retirees. I guess I don't see how that's answering my question. Let me make it a hypothetical question. You settle, you say I'll quit, pay me $20,000. That's the agreement. It settles whatever it settles. That's negotiated by the union in my hypothetical. Now, when they get the check, it only has $15,000 in it with an asterisk. This has been removed because it's Mother's Day. Now, because that happens after he's retired, he can't get the union to represent him and claim, no, you didn't pay me what you settled. Or, yes, you can get the union to go in and say, you didn't pay what you negotiated for. In that hypothetical. I believe the union could go in. You could. What's the difference then? Because in my hypothetical, Mother's Day had nothing to do with the settlement. It was just a wrongness. But in this case, severance payments that he agreed could be deducted. I'm not talking about the severance payments. I'm talking about the credit card. The credit card you say is not relevant to the settlement. In my hypothetical, Mother's Day was not relevant to the settlement. But you said in that circumstance, the union should go in and say, we want that money. Mother's Day has nothing to do with this. It's not the union in this case. It's Ford going in and saying, you owe us this money. And you're entitled to take it by virtue of what he signed in connection with his severance. Are you saying, look, irrespective of what the union did or didn't do, that's his beef with the union. But with regards to Ford, we did everything we were obligated to do. Is that in essence? Yes. Let's assume you didn't, just for the sake of argument, to Judge Rogers' point. And I want to just twist it. When would the statute of limitations, did he sue you for breach of contract? He filed a common law breach of contract claim along with the hybrid 301 claim. OK. And the contract claim was dismissed. The contract claim was dismissed. So all he has left is the hybrid 301. Exactly. And against Ford, how much time does he have? Six months, right? Six months. Is the statute of limitations against you contingent on what happened with the union? Or does it run from the date he got the check? I believe it runs from the date he gets the check. And so if you could explain to us why the district court, what happened with your motion to dismiss on statute of limitations ground, or judgment on the pleadings? The judgment on the pleadings motion was converted to a summary judgment motion. And the judge ruled, number one, that this common law breach of contract claim was preempted. Right. And dismissed that claim. And he ruled that we had submitted, and it's in the appendix, but we submitted an affidavit that attached the provisions of the collective bargaining agreement that talked about how soon a grievance has to be filed. And he said, in the state of the record as it was, which was, as Mr. Andre pointed out, it was the very beginning of the litigation, he said he couldn't make a determination as to whether there was a statute of limitations issue. And discovery should occur on that issue. So he never ruled on it? So he never ruled on it. And Mr. Andre, on behalf of Local 600, made the argument in their subsequent motion for summary judgment, he didn't rule on that issue either. But he ruled in your favor for other grounds? He ruled. In the end, he ruled in your favor completely on other grounds. On other grounds. Because you have to. Yes, right? Yes. Thank you. What's your explanation as to why Ford did not advise this individual of what the deductions would be from his settlement checks at the time that the settlement was entered into? Well, certainly Ford would have if he had asked. And when Mr. Richard went to Evel Walk at the Dearborn Stamping Plant and said Mr. Hollingsworth would like to know what the deductions are for, Mr. Richard acknowledged that Evel Walk handed him printouts that identified the codes and the amounts, some of the codes he recognized as subpay, vacation pay. But that was after the settlement agreement had been entered into. No, this was shortly after he received the last of the three checks. But that would have been after the settlement. He didn't start getting the checks until the settlement agreement was signed, correct? I'm sorry. Right, he didn't. So the settlement had already been entered into when he was told what the deductions would be. Right. Okay. And then he got the last of the three checks, and that's when he says he went to Mr. Richard. And Mr. Richard agrees. Yes, he came to me, but he asked me what are the deductions for. Mr. Richard went to Evel Walk, a labor relations representative at the Dearborn Stamping Plant, said what are the deductions for. He handed him printouts showing him what the deductions were for. And Mr. Richard's testimony was that he believed that if Mr. Hollingsworth wanted more information, he'd go to Ford. He never came to us. And he never even asked Ford when he called over a year later and said I need that check reissued. He was talking to the person who could tell him, but he didn't say it. And by the way, what were the deductions for? And that was more than a year after he received the check. All right. I think we have your position in hand. Thank you. Thank you. Any rebuttal? Is it true that the deductions in the third check related to credit card debt, which was not at issue in the grievance? To address that, there were several deductions. I have a yes or no question. Is that true or not? Excuse me. Could you turn the light on, please? I believe the answer to that, Your Honor, would be yes based on the language in the grievance itself, yes. Okay. Thank you. Thank you. Just a few points that I would like to make. The first regarding the deductions and whether or not they are resolved by the grievance settlement. Under any circumstance, the amounts that were deducted, particularly those amounts that were deducted from the third grievance settlement check, those are disputed. Ford did not provide any reasonable rationale for these deductions. And, in fact, as outlined in our briefing, some of the deductions are for funds which Ford is alleging Mr. Hollingsworth received, which he, in fact, did not ever receive. So under any circumstance, regardless of ---- Your client knew in April of 2011 that they took deductions when he received the $3,000 check or whatever it was, right? That is correct. Why didn't the statute of limitations as to Ford start running then? The statute of limitations for the LMRA claim? Yes, as to Ford. Because at that point he was still pursuing the internal remedy through the union. Okay. So the whole thing links to the union. Even for the company, it links to the union, correct? It does, Your Honor, under the hybrid 301 claim, yes. Okay. Now, the second point that I would like to make, and there's a large portion of Anthony Richards' deposition testimony, which is quoted in our brief on pages ---- Can I ask you one other question related to Judge Rogers' question? I'm sorry to interrupt you. Is the grievance settlement said this, right? I also understand that this payment will be reduced by my outstanding debts to the company. I'm sorry, Your Honor. Are you referring to the grievance settlement or the special retirement incentive? I thought it was the grievance settlement, but correct me if I'm wrong. It's not. It's just the settlement, isn't it? Your Honor, I do not believe the grievance settlement itself, which is a one-page document, I do not believe that contains any provisions permitting a deduction for these amounts that are at issue. Do you have Ford's brief in front of you? I do not have it in front of me. I have it back at my table. They said, but Hollingsworth ignores the actual words of the document, which state, and the third bullet, this is on page 21 of their brief, is I also understand that this payment will be reduced by my outstanding debts. And then they cite R51-12, which they say is the grievance settlement. If I may, Your Honor, I just prefer my table to grab my book. That would be great. Here's that page if you want to look at it. Oh, yeah, that's great. Thank you. They cite three pages. Here's the other two. Thank you, Your Honor. Now, our exhibits don't quite match up, so I'm not sure which page ID number they're referring to. I don't have that in front of me, but... R57 is what they cite. So that's what I looked up. That's what I just handed. Okay. This argument that Ford is presenting is actually a conflation of what the grievance settlement is. They're trying to allege that the terms of the SRIs, which are two separate documents marked as page 1 of 2 and 2 of 2, are somehow incorporated into the one-page grievance settlement itself. Now, the grievance settlement does not contain any language for incorporation of terms of the SRI. Further, under the terms of the grievance settlement, it doesn't even specify which SRI, which special retirement incentive Mr. Hollingsworth would elect. There are presumably several. There are even circumstances where he could have elected no special retirement incentive. So I believe this conflation by Ford of including the terms in the special retirement incentive and somehow applying those to the grievance settlement check, which is completely separate, that's inappropriate. And I can further reply that on pages 11 and 12 of our reply brief, we do address that specifically and outline the specific terms. And you are right. They are not included in the grievance settlement. I see that you're out of time. If I may make just one final point, Your Honor. There was some discussion by Ford's counsel regarding Evel Walk and Anthony Richards' communications with Evel Walk. There's a large portion of Anthony Richards' deposition testimony, which is quoted in our principal brief on pages 30 through 32, which shows, and I can just go right through, question, did Evel Walk, in fact, get you an answer? Answer, no. Question, did you ever receive an answer from Evel Walk? No, I didn't. Were you updating Mr. Hollingsworth during these conversations? Eventually he would call or I would see him in a social gathering. But did you ever get Mr. Hollingsworth an answer? The answer is no. Whatever communications Anthony Richards may or may not have had with Evel Walk, this was not communicated to Mr. Hollingsworth as per Anthony Richards' own testimony. All right. Thank you. The case is submitted. There being no further questions.